UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan                                                                                     609-989-0478
United States Bankruptcy Judge                                                                       609-989-2259 Fax


March 27, 2008

William B. Oliver, Jr. Esq.
Brandywine Commons
2240 Highway 33, Suite 112
Neptune, NJ 07753

James Aaron, Esq.
Ansell Zaro Grimm & Aaron
1500 Lawrence Avenue
CN 7807
Ocean, NJ 07712

Albert Russo, Esq.
Standing Chapter 13
CN 4853
Trenton, NJ 08650-4853

        Re:    Paul Bruno, Debtor
              06-21423

Counselors:

        The Court has reviewed the arguments and submissions in the above referenced Chapter 13 and issues the following ruling:

        The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984 referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

This matter is before the Court by way of the Debtor's Motion to Disgorge $2,600.00 from the secured creditor Wiley Boy, LLC and the Landlord's Application for Leave to File an Amended Proof of Claim. Paul Bruno ("Debtor") is the former owner of Etre Hair Salon ("Etre") in Rumson, NJ. On November 16, 2006 (the "Petition Date"), the Debtor filed a Chapter 13 Voluntary Petition. The Debtor's Chapter 13 Plan sought to pay the post-petition rent arrears owed to the landlord, Wiley Boy, LLC (the "Landlord") for the commercial property located at 101 Avenue of Two Rivers, Rumson, N.J. and to pay a base amount to unsecured creditors. The Plan was confirmed by an Order dated July 25, 2007, and provided for assumption of the lease.[1]

Prior to the Petition Date, on October 24, 2006, the Landlord pursued an eviction action in state court. The parties were scheduled for trial on November 17, 2006, the day after the Petition Date. As of the Petition Date, the Debtor owed the Landlord $9,670.00 in pre-petition rent and late fees.[2]

The Landlord moved for stay relief on December 15, 2006 for non-payment of pre-petition and post-petition rent. The Debtor objected, but the parties then reached a resolution of the matter whereby the Debtor would pay the outstanding rent to the Landlord. In addition, in the event the Debtor were to miss a future payment, the parties agreed that the Landlord could obtain an order for stay relief by filing a Certification of Default with the Court. An order to this effect was entered March 28, 2007.

On July 20, 2007, the Landlord filed a Certification of Default. Over the Debtor's objection, the Court entered an Order Vacating the Automatic Stay. On August 15, 2007, the Debtor moved to reinstate the stay as to the Landlord. An Order Reinstating the Automatic Stay was entered on October 12, 2007, and

---

[1] The Court notes that 11 USC 365(d)(4) sets a deadline of 120 from the order for relief for assumption of a lease for nonresidential real property. The Debtor did not file a motion to assume the lease within this time frame. While this deadline can be extended for an additional 90 days upon timely motion, no such request was made during the pendency of the proceeding. Thus, notwithstanding the terms of the confirmed plan, the lease was rejected by the Debtor's inaction, and the landlord was free to negotiate new terms with either the Debtor or a new lessee. Notwithstanding, the Court does not view the apparent rejection of the lease as having a material bearing upon the Court's decision in this matter or affecting the result.

[2] The original complaint sought payment of $6150.00, which consisted of the balance of the September rent, the October rent and the appropriate late fees.

provided, among other things, that in the event the Debtor were to miss a future payment again, the Landlord could obtain another order for stay relief by filing a Certification of Default with the Court. Eleven days later, the Landlord filed a Certification of Default which the Debtor opposed on grounds that he was entering into a contract for sale of the business. The Court entered an Order Continuing the Stay on November 26, 2007, to permit the Debtor sell the business.

On December 3, 2007, the Debtor entered into a contract of sale with Julie McKenzie and Carol Krinsky (the "Buyers" or "Assignees") for the purchase of the Debtor's business. The Addendum to the Contract indicates that the sale is contingent upon, among other things, Bankruptcy Court approval and the assignment of the lease to the Assignees/Buyers which was subject to credit approval. A hearing on the Motion to Sell the Business was held on December 11, 2007, and an Order Approving the Sale of the Business and Its Assets was entered on December 12, 2007.

The Contract of Sale lists a closing date of December 10, 2007, but it is unclear when the closing occurred. Both parties agree, however, that it was not until the closing that the Landlord advised that the Debtor had paid only $600 of the $3200 security deposit. The parties then executed an Assignment, Assumption and Modification of Lease Agreement (the "Agreement"). The Agreement, in section 3, entitled "Security Deposit," indicates that:

> Notwithstanding the amount of security indicated in the Lease Agreement, the Landlord was given and is presently holding security in the amount of only $600.00 which amount shall continue to be held by the Landlord on behalf of the Assignee as Tenant. In addition, Assignee agrees to post with the Landlord the sum of Two Thousand, Six Hundred ($2600.00) Dollars to bring the amount of security held by the Landlord to the amount of $3200.00 as provided in the Lease Agreement (the Security Deposit).

The Agreement is dated December 17, 2007, and was executed by all parties, including the Debtor. Following the closing, the Landlord received three checks from the Attorney Trust Account of Spiro T. Michals, attorney for the Buyers. One of these checks was in the amount of $2,600.00 which represented

the security deposit deficiency. The Landlord also received counsel fees and unpaid pre-petition and post-petition rent. As a result of being paid all that was due, the Landlord withdrew the Proof of Claim previously filed on February 15, 2007, in the amount of $10,211.00. The Proof of Claim reflected an amount due of $9,670.00, court costs of $41.00 and $500.00 in attorneys fees for the tenancy action.

On December 26, 2007, the Debtor filed a Motion to Disgorge $2,600.00 from the Landlord as being paid improperly at the closing. The Landlord opposed the Motion on grounds that the amount sought in the state court action did not include the security for the lease but only the actual rental arrears owing. On January 25, 2008, as a procedural response, the Landlord filed an Application for Leave to File an Amended Proof of Claim in the amount of $2,600.00 representing the amount due from the Debtor for the security deposit, the amount which Debtor seeks to disgorge from the Landlord.

The Debtor seeks to have the Landlord disgorge the $2600 paid by the Assignees. The Debtor argues that the Landlord is owed nothing in terms of a security deposit as she had received this amount in full, in cash, when the lease was signed by the Debtor. The Landlord objects on grounds that the security deposit was originally 2 months rent, or $6400, but the Debtor asked that it be reduced to one month's rent and paid in installments. According to the Landlord, the Debtor made several cash payments totaling only $600. Both parties assert that the issue regarding the deficiency of the security deposit did not arise until the time of the closing of the sale of the business.

On December 18, 2007, after payment was received, the Landlord withdrew her Proof of Claim but now seeks to file an amended claim. It is the Debtor's position that the Chapter 13 Plan was confirmed by Order dated July 23, 2007 and that in confirming the Plan, the Trustee used the Proof of Claim filed by the Landlord which did not include the unpaid portion of the security deposit. Thus, the Debtor argues that the doctrine of judicial estoppel should apply to prevent the Landlord from taking inconsistent positions with respect to the allegedly unpaid security deposit.

4

Prior to the Motion to Disgorge, the Court was unaware of the issue surrounding the security deposit deficiency. The parties did not seek oral argument at the hearing on the sale of the business and relied upon the written submissions. The Debtor could have raised the issue then. This Court need not undertake to resolve the factual inconsistencies reflected in the parties' respective positions since the Agreement is clear about the satisfaction of the security deposit deficiency and was executed by the Debtor without protest. If the Debtor did not believe the security deposit was owing, surely he would have raised the issue at the closing and/or reserved his rights to dispute the issue at a later date. It should be noted that the Debtor and the Buyers were represented by the same attorney, Spiro T. Michals. Thus, at some point prior to Mr. Michal's disbursement of the funds, the Debtor had the opportunity to object to the payment of the remaining security deposit to the Landlord. There is nothing in the record that indicates the Debtor objected at any point in time prior to filing the disgorgement motion.

11 § USC 365 (b)(1)(a) does not permit an unexpired lease to be assumed unless, at the time of assumption, the debtor cures the monetary default(s) thereunder or makes adequate assurance that he will do so promptly. In this case, as a condition of the assignment of the lease to the Assignees/Buyers, the Landlord required that the remainder of the security deposit be paid. The landlord's previous filing of a proof of claim, which omitted inadvertently the amount of the unpaid security deposit, does not act as a waiver of the Debtor's obligation to cure this default. Waiver is the intentional relinquishment of a known right, and when it involves a statutory right, a waiver must be "clear and unmistakable." In re Mangano, 253 B.R. 339, 343-344 (Bankr. D. N.J. 2000) (citing to In re Veltre, 2000 Bankr. LEXIS 1409, No. 99-40669, slip. op. at 5, citing Paradise Hotel v. Bank of Nova Scotia, 842 F.2d 47, 51 (3d Cir. 1988); Central Pa. Teamsters Pension Fund, 85 F.3d 1098, 1109 (3d Cir.1996); Evcco Leasing Corp. v. Ace Trucking Co., 828 F.2d 188, 195 (3d Cir.1987)). There is no evidence in the record of any "clear and unmistakable waiver". The payments made to the Landlord at the closing on the sale of Etre appear to be cure payments for all

amounts due under the Lease: the pre-petition and post-petition rent, the security deposit and attorneys fees.

The Landlord states, and this Court believes, the Proof Claim filed simply included the rent arrears. Counsel for the Landlord believed, erroneously but in good faith, that the unpaid security deposit was not a "claim" due under the lease, but rather simply security for the obligations thereunder. Regardless of the amounts stated in the Proof of Claim, the Landlord was free to amend that claim. Amendments to timely proofs of claim are liberally allowed and may relate back to the initial filing if filed after the bar date, but will not be permitted if they actually constitute new claims. See In re Metro Transportation Co., 117 B.R. 143, 147 (Bankr.E.D.Pa.1990). If the initial proof did not "give fair notice of the conduct, transaction or occurrence that forms the basis of the claim asserted in the amendment" then the amendment asserts new claims and will not be allowed. Id. (quoting In re Westgate-California Corp., 621 F.2d 983, 984 (9th Cir.1980)). On the other hand, amendments that merely cure defects in the previously-filed claim, describe the claim in more detail, plead new theories of recovery on the same facts presented in the initial claim, or increase damages do not constitute new claims. In re Ben Franklin Hotel Assoc., 1998 WL 94808 (E.D.Pa.). The Landlord's proposed amended claim[3] is simply a modification of the cure amounts due under the Lease. The Court finds that the funds were properly paid to the Landlord and, as such, the Motion to Disgorge is denied. The Landlord's Application for Leave to file an Amended Proof of Claim is granted. Appropriate orders will be entered.

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[3] For clarity of the record, the Court reinstates, *sua sponte*, the withdrawn proof of claim, and permits the amendment as discussed herein.